[Civ. No. 9672. First Appellate District, Division One.—May 11, 1936.]

D. A. PARKER, Appellant, v. HOME FIRE AND MARINE INSURANCE COMPANY (a Corporation), Respondent.

716

Thornton & Watt and Thornton & Taylor for Appellant.

Orrick, Palmer & Dahlquist for Respondent.

THE COURT.—The action was brought by plaintiff as the assignee for collection of Herbert Inc. to recover for the loss by fire of a lot of prunes claimed to have been owned by the latter and to have been covered by a policy of fire insurance issued to it by the defendant.

The case was tried before the court, which rendered judgment in defendant's favor. The plaintiff appeals.

There is no dispute as to the facts, and the only question of law involved is as to whether Herbert Inc. had acquired title to the goods at the time they were destroyed and were consequently covered by the policy.

The sale and purchase of the prunes was one of a number governed by the terms of a general contract dated June 20, 1932, and entered into by United Prune Growers, a co-operative marketing association (designated therein as "United") on the one part, and a number of packers of dried fruit, of which Herbert Inc. was one, on the other. The particular lot of prunes here involved, although the property of United, were stored at the packing plant of Herbert Inc., to which they had been delivered by the growers for the account of said marketing association, and they had been pledged by the latter to the Bank of America and the Federal Farm Board, which had jointly granted a loan to United, and Herbert Inc. had delivered to the Federal Reserve Bank as the representative of the lenders a writing, certifying that it held the prunes as their pledge-holder.

The sale had been effected by the acceptance on October 31, 1932, by Herbert Inc. of an offer by United of a certain gross tonnage, including a quantity of 154,279 pounds, which is the subject of the present dispute. Invoices were prepared and rendered in due course, but at the time of the destruction of the prunes payment therefor had not yet been made.

On January 9, 1933, United delivered to said Federal Reserve Bank a certified check sufficient in amount to repay its loan, and at this time the bank surrendered to it certain pledge-holders' certificates, including that of Herbert Inc. It was too late in the day to pass the check through the clearing house, but this was done on the following day, January 10th, and the amount thereof credited to the accounts of the Federal Farm Board and Bank of America in the respective sums due them as participants in the loan. The fire occurred at about 6 o'clock in the morning of said January 10th, i. e., after the surrender of the pledge-holders' certificates to the United but before the accounts of the lenders had been credited with the proceeds of the check.

The provisions of said general contract the application of which to the sale here involved determines the question of the passage of title are the following:

Paragraph 28 (in part):

"All prunes bought from any party by any other party pursuant hereto shall be free of all liens and charges when delivered to the buyer or when the buyer becomes entitled to retain the same."

Paragraph 29 (in part):

"(a) When prunes tendered as a delivery by United are shipped from another location to a Packer's plant, they shall be delivered by United at such plant. When prunes to be delivered to a packer at a particular plant are stored at such plant before they are tendered for delivery, delivery thereof shall be *deemed made* to such packer when (1) such prunes *shall be released to such Packer* so that it shall be entitled to take delivery thereof free of all liens and charges."

Paragraph 30 (in part):

"If a packer shall wish to make any claim in respect of or reject any prunes tendered for delivery by United, it shall notify United of such claim or rejection within forty-eight hours after such prunes are delivered or tendered for delivery by United, or such claim or claimed right of rejection

shall be deemed waived. In any case where payment is made before the expiration of forty-eight hours after delivery or tendered delivery of prunes to a buyer, such payment shall be subject to the buyer's right to examine such prunes within forty-eight hours after delivery or tender and to reject them or make any proper claim in respect thereof. . . . Payment of prunes bought from United and retained by or delivered to a packer shall be made on presentation of invoice by United at any time after such prunes are delivered (or deemed delivered) to and accepted by such Packer. When requested by a packer, United shall promptly present such invoice. Title to prunes bought from United shall pass upon payment therefor, but unless United shall notify a Packer in writing before particular prunes are accepted by such Packer that they are not to be used before payment is made therefor, the Packer shall be entitled to use the same, and title thereto shall pass to such packer upon their *acceptance* by such packer, such packer being responsible to United for the price thereof upon presentation of an invoice therefor. . . . ''

It is seen from the quoted provisions of paragraph 30 that title passes upon payment; and also that upon certain conditions it passes without payment; but in the latter case it is quite obvious that with regard to prunes already in the possession of the buyer (packer) who is holding them for the account of United, no title passes until they are ''deemed delivered'' to the buyer, nor until they are accepted. This ''deemed delivery'' necessarily takes place when the merchandise is, as it is expressed in another part of the same paragraph, ''retained'' by the buyer in execution of a sale to him.

If the prunes which are the subject of the sale here involved had not at the time of the sale been under pledge to third parties we should have no difficulty in holding that the ''deemed delivery'' to Herbert Inc. took place upon its acceptance of the offer of the United of these prunes; that, having made no objection to them, either as to quality or in any other respect, within forty-eight hours of such ''deemed delivery'', it thereby accepted them (which is the acceptance referred to in paragraph 30) ; and that the United, having failed to notify Herbert Inc. in writing before such ac-

ceptance that the latter could not use the prunes before payment, title then passed.

It appears, however, that at the time of the sale of these prunes they were under pledge to the Federal Farm Board and Bank of America. It is true, as already mentioned, that on the afternoon of January 9, 1933, a few hours before the destruction of the prunes by fire, the custodian of the pledge certificates, upon receipt by it of a certified check for the amount due to the pledgees, had surrendered these certificates to the United,—and it may be assumed that the prunes were thereby freed from the lien of the pledge notwithstanding that the money represented by the check was not actually credited to the respective accounts of the pledgees until the next morning; but the United did not then nor at any time "release" the prunes to Herbert Inc. Under the express provision of paragraph 29 that, in the case of prunes stored at the packer's plant "delivery thereof shall be deemed made to such packer when (1) prunes shall be released to such packer so that it shall be entitled to take delivery thereof free of liens and charges", until this specific release by United to Herbert Inc. took place there was no "deemed delivery" to the latter, and until "deemed delivery" occurred there could be no acceptance, and, in consequence, no passage of title. This was the condition existing at the time of the fire and the resulting destruction of the prunes.

Furthermore, even if it could be held that title to prunes stored at the buyer's plant passes to the buyer without the specific release mentioned in paragraph 29, still, under the provisions of paragraph 30, without payment it could not pass until there was a deemed delivery to and acceptance by the buyer. While it is of course perfectly competent for parties to contract to sell and buy goods subject to a lien, the contract here specifically provided that the deemed delivery of prunes held by a packer for the account of United should not take place upon a sale thereunder until the prunes were free of all liens and charges. This condition, as already pointed out, did not arise until the afternoon of January 9, 1933, at the earliest. The buyer then had forty-eight hours in which to accept or reject the prunes; and until acceptance the United had the right to notify the buyer that it could not use the prunes until payment was made therefor; and

only in the absence of such notification · would title pass without payment. (Here no payment had been made.) The buyer by a specific acceptance within forty-eight hours could have terminated the time reserved to the United to give such notification, but it did not do so; and although its inaction in this respect would at the end of that period have resulted in its automatic acceptance of the prunes, the fire occurred within that time, thus effectually preventing acceptance, with the result that no title passed.

It follows from what we have said that the trial court correctly held that the prunes never became the property of Herbert Inc., and accordingly that they were not covered by the policy issued to that corporation by the defendant.

The judgment is affirmed.